On Rehearing.
MONROE, C. J.
The rehearing was restricted, and the present opinion will be confined to the questions (1) whether H. T. Cot-tam & Co., Limited, is entitled to the lien asserted by it and recognized in the opinion handed down; (2) whether Manuel Coguenhem is entitled to the lien, upon the corn and hay, asserted by him, and denied recognition in that opinion.
[7] 1. The notarial act relied on by Cottam & Co. bears date August 6,1912, and contains the following, among other, recitals and stipulations, to wit:
“I, Gabriel Martel, president of the Himalaya Co., * * * and acting by virtue of a resolution of the board of directors of said corporation, * * * declared that his said corporation, being in need of groceries, goods and merchandise, to supply the laborers on its plantations hereinafter named, to enable said corporation to make, cultivate, gather, harvest and put into marketable condition the crop of sugar ca/ne and sugar now being made, raised and cultivated on said plantation, has applied to H. T. Cottam & Co., Limited, * * * to make such advances on said crop. * * * That the plantations for which such groceries are to be used in making the said crops are [naming them] as well other tracts adjoining and contiguous to the said plantations, which are cultivated by the sand Himalaya Company. * * * Now to secure that said advances * * * for said crops, made during this current year on said lands [shall be reimbursed], the said Himalaya Company * * * does hereby agree to pledge and pawn to the said H. T. Cottam & Co., Ltd., all of the said crop of sugar to be made and manufactured on said lands and at the factory situated on the Pugh Himalaya Plantation, and agrees and promises to ship and consign to Frank Barker Company, at New Orleans, La., a sufficient amount of the sugar manufactured at the said Himalaya Factory, during the grinding season of 1912-1913, to pay said advances, and to authorize said merchant to pay the proceeds of such sugar to said H. T. Cottam & Co., Ltd., until all of said advances have been reimbursed,” etc. (Italics by the court.)
It is quite clear, from the foregoing, that the resolution under which the president of the Himalaya Company acted authorized him to contract, and that he did contract, only for advances needed “to enable said corporation to make, cultivate, gather, harvest and put into marketable condition, the crop of sugarcane and sugar, now [then], being made, raised and cultivated [by it] on said plantations.”
It could not well have been otherwise, since the company had no capacity to pledge the crops of its tenants or of third persons which it expected, or had contracted, thereafter to acquire, unless, indeed, it could be shown that it was so authorized by its contracts with such tenants! or third persons, and no attempt at that showing has been made. It has been shown, however, without contradiction, that “not a stalk of cane raised by the Himalaya Planting Company was ground,” that “it was all put down for seed,” and, hence, that nothing was realized to which the pledge and pawn asserted by Cot-tam & Co. could attach.
In Minge v. Barbre, 51 La. Ann. 1295, 26 South. 180, it was assumed, as a matter of course, that a merchant who makes advances to a planter, under section 1 of Act 66 of 1874, is entitled to no privilege or right of pledge or pawn upon crops acquired by the planter otherwise than by his own planting.
It is said that Cottam & Co. acquired a right of pledge upon the sugar and molasses shipped to Barker by reason of the fact that it was so shipped agreeably to a stipulation to that effect in the contract between Cottam & Co. and defendant, and that the delivery to Barker was, in effect, a delivery to Cottam & Co. But there are two answers to that *495 saying: (1) The stipulation mentioned referred to crops upon which Oottam & Oo. expected to acquire a privilege and right of pledge, by virtue of its advances and contract, under Act 66 of 1874; and, no such crops were produced; and (2) the sugar and molasses here in question were not shipped agreeably to the stipulation referred to, but, under a special agreement between Barker and defendant, entered into for the benefit of those who were entitled to the privilege or right to which Oottam & Oo. was not entitled.
[8] 2. The sheriff’s return upon the writ of sequestration shows that he seized:
“1 magner tank, about % full, 1st centrifugal molasses, estimated at about $2,500.00; 1 magner tank of second sugar, valued at about $1,-200.00; 33 bbls. sugar, valued at $330.00; 30 bbls. corn, valued at $30.00; and 25 loads of hay, valued at $75.00.”
In the petition! for the bonding of the property, it is alleged that “a sequestration was issued, sequestering a lot of molasses,” neither sugar, corn, nor hay being mentioned in that connection, but the prayer of the petition reads, “That the defendant * * * be permitted to bond the property sequestered,” and the order of court and the bond itself are framed in the language of the prayer.
There is, however, no evidence or admission in the record, to show that the corn and hay were raised by defendant, upon its plantation, and, though they may have been, it is equally probable that they were needed for the feeding of the stock, and would, perhaps, have served that purpose for a day or two, in which case, they were exempt from seizure.
Conceding, however, that the burden rested on defendant to assert and establish that ground of exemption, we think it will also have to be conceded that the burden rested on plaintiff to establish, as he had alleged, that he was entitled to the privilege which authorized the sequestration. For aught we know, the corn and hay may have formed no part of the crop upon which, alone, he asserted the privilege, but may have been purchased from a third person, in which case he was entitled to no privilege. Upon the whole, we find no reason to amend our former decree as to the matter thus considered.
It is, therefore, ordered and adjudged that the decree heretofore handed down be amended and recast so as to read as follows:
It is ordered that the judgment appealed “from be annulled and set aside; that Manuel Coguenhem recover of and from the defendant the Himalaya Planting & Manufacturing Company, Limited, and J. Sully Martel, in solido, $2,429.61, with interest thereon at 8 per cent, per annum from December 12, 1912, until paid; that the writ of sequestration herein issued be dissolved, and the liens, privileges, and rights of pledge and pawn, asserted by plaintiff and the various interveners, disallowed; and that the fund, of $14,40S.92, now in the hands of Frank Barker, dealing under the name of Frank Barker Company, be retained by said Barker, and by him appropriated to the payment, pro tanto, of the note for $1S,00Ó, and interest, drawn by defendants, of date April 9, 1912, and, by said Barker acquired and held for a. valuable consideration.
It is further ordered that the costs of the main action, save those incurred by reason of the writ of sequestration, be paid by the defendants, the Himalaya Planting & Manufacturing Company and J. Sully Martel, that the costs of the sequestration be paid by plaintiff, and that the costs incurred by reason of the interventions be paid by the interveners, respectively.